IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LEVAIL GIVENS, )
)
        Plaintiff, )
)
vs. ) Case No. 16-cv-303-MJR-SCW
)
DAVID VAUGHN, )
STEVE KEIM, )
STEVE DUNCAN, and )
JOHN R. BALDWIN, )
)
        Defendants. )

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

1. **INTRODUCTION**

    This matter is currently before the Court on Defendants' Motion for Partial Summary Judgment (Doc. 43). Levail Givens, an inmate incarcerated at Lawrence Correctional Center ("Lawrence"), filed the present lawsuit, acting *pro se*. Plaintiff Givens alleges that Defendants, who are officials at Lawrence and with the Illinois Department of Corrections, violated certain rights afforded him by the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Specifically, he alleges he has been precluded from practicing certain aspects of his Hebrew Israelite religion.

    In their Motion for Partial Summary Judgment Defendants assert that, as to some of his claims, Plaintiff has failed to exhaust his administrative remedies prior to filing

suit as required by the Prison Litigation Reform Act.  Plaintiff has filed a response, and this matter is ripe for disposition.  As discussed below, the Court finds that Plaintiff has exhausted his administrative remedies as to his kosher diet claims, but has not exhausted as to any Hebrew Israelite ceremonies specifically referenced in his grievances.  Defendants' Motion for Partial Summary Judgment (Doc. 43) is therefore **GRANTED in part and DENIED in part**.

2. FACTUAL AND PROCEDURAL BACKGROUND

   a. *Factual Background*

On December 19, 2014, Plaintiff Givens filed an institutional grievance at Lawrence, seeking the establishment of Hebrew Israelite services within Lawrence (Doc. 60-1, p. 4).  Plaintiff sought the establishment of Hebrew Israelite services, and not African Hebrew Israelite services, which he asserted are different (*Id.* at 4 – 5).  In the grievance, Plaintiff detailed his attempts to obtain such services, to no avail, and claimed discrimination on the part of Defendant Chaplain Keim, and others, in not allowing for Hebrew Israelite services (*Id.*).

The December 19 grievance was received by Plaintiff's counselor on December 30, 2014, and a response was issued the same day (*Id.* at 4).  Though no Grievance Office response is in the record, the grievance appears to have been given a number by the Lawrence Grievance Office (*See id.*).  There is no record of an appeal to the Administrative Review Board ("ARB") or ARB response, however.

Then, on December 23, 2014, Plaintiff submitted two more grievances.  In the

first grievance, Plaintiff again complained that he was unable to establish Hebrew Israelite services, and among the relief requested, he asked that Hebrew Israelite services be provided once a week (*Id.* at 6). Plaintiff also attached a documented entitled "First Amendment Religious Proposal" to this grievance (*Id.* at 7, 8). In the proposal, he requested weekly Hebrew Israelite services on Saturdays (*Id.* at 8).

In the second December 23 grievance, Plaintiff again complained of the lack of Hebrew Israelite services, as well as, a specific incident with Defendant Vaughn, and alleged that the refusal to establish Hebrew Israelite services was in retaliation for Plaintiff filing grievances (*Id.* at 9 – 10). As with the December 19 grievance, there is no indication of an appeal of, or ARB response to, the December 23 grievances.

Plaintiff fired off another grievance on January 30, 2015, this time grieving not receiving a kosher diet (Doc. 44-2, p. 1). In that grievance, among other things, Plaintiff indicated that he was a member of the Hebrew Israelite faith, and that on January 30, 2015 he had been taken off of a kosher diet that he had been receiving for the previous four years (*Id.* at 2). He further elaborated that his faith requires him to "eat a kosher diet in compliance with the Hebrews Towrah…. (*Id.*)." Among the relief requested, Plaintiff asked that he "be placed back on my diet, Kosher. (*Id.* at 1)".

Plaintiff's counselor received the grievance on February 3, 2015 and issued a response on March 30, 2015 (*Id.*). The counselor indicated that Plaintiff was no longer receiving a kosher diet per the IDOC Chief Chaplain (*Id.*). The Lawrence Grievance Office received the January 30 grievance on April 9, 2015, and it was reviewed on June

16, 2015 (*Id.* at 4). The Grievance Office recommended that the grievance be denied. (*Id.*). The warden concurred on June 18, 2015, and Plaintiff appealed his grievance to the ARB on July 7, 2015 (*Id.*). The January 30 grievance, which was numbered by the Grievance Office as "04-15-75", was received by the ARB on July 14, 2015, and the ARB denied the appeal on February 8, 2016 (*Id.* at 3, 4).

On July 15, 2015, Plaintiff filed a grievance seeking Sabbath day services and ceremonies, a ceremony for the Memorial Blowing of the Trumpets, and a Day of Atonement Ceremony (Doc. 44-3, p. 4 – 5). Attached to the grievance was a document entitled "Religious Service and Ceremonies at the Lawrence Corr. Ctr. for the Hebrew Israelites' Congregation. (*Id.* at 6). In this document, Plaintiff laid out in specific detail his request for Sabbath services on Saturdays, a Memorial Blowing of the Trumpets ceremony, and a Day of Atonement ceremony associated with Yom Kippur (*Id.* at 7 – 10). Plaintiff's counselor responded to the grievance the next day, on July 16, 2015 (*Id.* at 4). Plaintiff also filed a similar grievance on July 16, 2015, also seeking Sabbath services and the Day of Atonement and Memorial Blowing of Trumpets ceremonies (*Id.* at 2 – 3). The counselor responded to that grievance on July 17, 2015 (*Id.* at 2).

The Grievance Office responded to both July 2015 grievances on September 23, 2015, recommending denial, and the warden concurred on September 24, 2015 (*Id.* at 11). Plaintiff appealed the July 2015 grievances to the ARB on October 15, 2015, and the ARB denied the appeal on March 14, 2016.

Finally, on January 5, 2016, Plaintiff filed a grievance again relating to the lack of

Hebrew Israelite services at Lawrence, generally (Doc. 44-2, p. 7). He received a response from his counselor on February 5, 2016, and on March 3, 2016, the Grievance Office recommended that the grievance be denied (*Id.* at 6, 7). The warden concurred on March 11, 2016, and Plaintiff appealed to the ARB on March 22, 2016 (*Id.* at 6).

### b. Procedural Background

Plaintiff filed the suit at-bar on March 21, 2016 (Doc. 1). His complaint raised numerous allegations relating to his inability to practice his Hebrew Israelite faith, including the lack of Sabbath day services, ceremonies, and feasts at Lawrence, as well as, Plaintiff's lack of a kosher diet. In its merits review order, the Court found, *inter alia*, that Plaintiff had sufficiently raised claims that, Defendant Vaughn denied Plaintiff access to group Sabbath day services, and Defendant Keim denied Plaintiff a kosher diet, both in violation of the First Amendment and RLUIPA (Doc. 8, p. 4, 5). Defendants now seek partial summary judgment relating to these two claims.

3. **LEGAL STANDARD**

### a. Summary Judgment Standard

Summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. ***Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED. R. CIV. P. 56(a))**. The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact.

*Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986)**. A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986)**. *Accord Bunn v. Khoury Enterpr. Inc.*, **753 F.3d 676 (7th Cir. 2014)**.

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson v. Donahoe*, **699 F.3d 989, 994 (7th Cir. 2012);** *Delapaz v. Richardson*, **634 F.3d 895, 899 (7th Cir. 2011)**. As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, **756 F.3d 542 (7th Cir. 2014)**.

A Motion for Summary Judgment based upon failure to exhaust administrative remedies, however, typically requires a hearing to determine any contested issues regarding exhaustion, and a judge may make limited findings of fact at that time. *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).** The case may proceed on the merits only after any contested issue of exhaustion is resolved. *Id.* **at 742.** While generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but to determine whether a general issue of triable fact exists, a different standard applies to summary judgment on the issue of exhaustion. *Nat'l Athletic Sportswear Inc. v. Westfield Ins. Co.*, **528**

**F.3d 508, 512 (7th Cir. 2008)**. In *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey*, **544 F.3d at 740-41.** Here, the question of exhaustion is a purely legal question, and no hearing is required.

    *b. PLRA's Exhaustion Requirement*

The affirmative defense of failure to exhaust depends on whether a plaintiff has fulfilled the PLRA's exhaustion requirement, which in turn depends on the prison grievance procedures set forth by the Illinois Department of Corrections. *See Jones v. Bock*, **549 U.S. 199, 218 (2007).**

The PLRA provides that "no action shall be brought [under federal law] with respect to prison conditions…by a prisoner…until such administrative remedies as are available are exhausted." **42 U.S.C. § 1997e(a)**. Under the PLRA, exhaustion of administrative remedies is mandatory, and unexhausted claims cannot be brought in court. *Jones*, **549 U.S. at 211.** The case may proceed on the merits only after any contested issue of exhaustion is resolved by the court. *Pavey*, **544 F.3d at 742.**

The Seventh Circuit takes a strict compliance approach to exhaustion; requiring inmates follow all grievance rules established by the correctional authority. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006).** A prisoner must therefore "file complaints and appeals in the place, and at the time, the prison's rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).** But the PLRA's plain language makes

clear that an inmate is required to exhaust only those administrative remedies that are available to him. **42 U.S.C. § 1997e(a).** If the prisoner fails to follow the proper procedure, however, the grievance will not be considered exhausted. *Pavey v. Conley*, **663 F.3d 899, 903 (7th Cir. 2011) ("Pavey II").** The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006).**

Additionally, exhaustion is a precondition to filing suit; a prisoner may not file suit in anticipation that his administrative remedies will soon become exhausted. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** Rather, a prisoner must wait to bring a suit until after he completes the exhaustion process. *Perez v. Wisconsin Dept. of Corrections*, **182 F.3d 532, 535 (7th Cir. 1999) (citing 42 U.S.C. § 1997e(a))**. A suit that is filed prior to the exhaustion of remedies must be dismissed, even if a plaintiff's exhausts the administrative remedies during the pendency of the suit. *Id.*

c. *Exhaustion Requirement under Illinois Law*

IDOC's process for exhausting administrative remedies is laid out in the Illinois Department of Corrections Grievance Procedures for Offenders. **20 ILL. ADM. CODE § 504.810.** If unable to resolve dispute with the counselor, the prisoner may file a written grievance with the Grievance Officer within sixty (60) days of discovery of the dispute. *Id.* The grievance should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint…[or] as

much descriptive information about the individual as possible." *Id.* The grievance officer shall review the grievance and report findings and recommendations to the Chief Administrative Officer. **20 ILL. ADM. CODE § 504.830(d)**. The prisoner will then have the opportunity to review the CAO's response. *Id.* If the prisoner is unsatisfied with the institution's resolution of the grievance, he may file an appeal to the Director through the Administrative Review Board within 30 days of the CAO's decision. **20 ILL. ADM. CODE § 504.850**. The ARB is required to make a final determination of the grievance within six months after receiving it. *Id.* Completion of this process exhausts a prisoner's administrative remedies.

In emergencies, the Illinois Administrative Code also provides that a prisoner may request his grievance handled on an emergency basis by forwarding the grievance directly to the CAO. **20 ILL. ADM. CODE § 504.840**. The grievance may be handled on an emergency basis if the CAO determines that there exists a substantial risk of imminent personal injury or other serious or irreparable harm to the offender. *Id.* The request to have a grievance handled on an emergency basis may also be appealed to the ARB. **20 ILL. ADM. CODE § 504.850**.

4. ANALYSIS

   *a. Kosher Diet*

Defendants first argue that Plaintiff failed to exhaust his administrative remedies as to his kosher diet claims. At the hearing on Plaintiff's preliminary injunction motion, Plaintiff indicated that he had been approved for a kosher diet, but that the diet he was

then receiving was not actually kosher (*See* Doc. 61, p. 2). In support of their summary judgment motion, Defendants note that in his grievance relating to his kosher diet, Plaintiff indicated that he wished to be placed "back" on a kosher diet. They argue that Plaintiff did not exhaust his kosher diet claims since he did not grieve that his diet was not "kosher" during a time where he had actually been approved for, and was receiving, an IDOC kosher tray.

Defendants' arguments fail, however. It is easy to see that Plaintiff exhausted his administrative remedies as to his religious diet claims: Plaintiff claims in this suit that his rights demand he be provided kosher meals. In his January 30, 2015 grievance, Plaintiff asked to be placed on a kosher diet. The facts previously recited by the Court demonstrate that Plaintiff successfully exhausted the January 30 grievance prior to filing suit. Therefore, Plaintiff has exhausted his administrative remedies relating to his kosher diet claims. That Plaintiff was approved for a kosher diet after he filed suit, but still asserts his meals are not actually kosher, is not relevant to the issue of whether Plaintiff exhausted his administrative remedies for the claims raised in his complaint. Plaintiff raised claims in his complaint that his rights were violated by certain defendants' refusal to provide him a kosher diet, and Plaintiff exhausted a grievance prior to filing suit wherein he asked to be placed on a kosher diet. Any events relating to his placement on a kosher diet occurring after the filing of this suit go to the issue of mootness, which is a merits issue and is not currently before the Court. Regardless, even if the Court were to consider the fact that Plaintiff has now been approved for a

kosher diet, the Defendants' argument still engages in hair splitting. The fact that Plaintiff is currently on a kosher designated diet, which he claims is not actually kosher, does not preclude the January 30 grievance from exhausting his diet claims simply because he asked in that grievance to be placed "back" on a kosher diet. The January 30 grievance would clearly still place Lawrence officials on notice that Plaintiff was not satisfied with his diet tray, and needed a diet corresponding with his religious beliefs. Plaintiff's religious diet claims shall go forward.

### b. Ceremonies

Defendants also seek to limit the types of ceremonies included as part of Plaintiff's lawsuit going forward. In his complaint, Plaintiff referenced not being able to engage in ceremonies, feasts, and services. In his motion seeking a preliminary injunction, Plaintiff listed a number of specific feasts and celebrations he sought for the Court to order he be enabled to celebrate (*See* Doc. 4) Defendants argue that the only Hebrew Israelite ceremonies included in Plaintiff's exhausted grievances, however, were the Day of Atonement and Memorial Blowing of Trumpets. The Court finds that Plaintiff exhausted his administrative remedies only as to certain services and/or ceremonies—those specifically listed in his grievances.

The purpose of a grievance is to place prison officials on notice of a shortcoming in order to allow them to address it, *see Glick v. Walker*, **385 Fed.Appx. 579, 582 (7th Cir. 2010) (citing *Jones*, 549 U.S. at 218)**, but given the level of specificity in his grievances, Lawrence officials cannot be said to have been put on notice of ceremonies and feasts not

referenced in Plaintiff's grievances. Of the grievances referencing Hebrew Israelite services and ceremonies, only two of the grievances—the July 15 and July 16 grievances—were exhausted. Plaintiff referenced three services or ceremonies in his July 15 and 16 grievances, and was very specific in what he was seeking in relation to each service or ceremony. Given that, in a document attached to at least one of the grievances, Plaintiff specifically requested Sabbath day services and ceremonies, a celebration for the Memorial Blowing of Trumpets, and a celebration for the Day of Atonement, and made specific requests as to when those celebrations should take place, Lawrence officials were not placed on notice of other feasts or ceremonies not listed as part of Plaintiff's exhausted grievances. The "level of detail" required in a grievance depends on the state's exhaustion requirements. *Jones*, **549 U.S. at 218**. IDOC's grievance procedures mandate that a grievance "contain factual details regarding *each aspect* of the offender's complaint," **20 ILL. ADM. CODE § 504.810**, and at the time Plaintiff filed his grievances, he knew or should have known exactly what services and ceremonies he wanted. Plaintiff's reference to certain specific Hebrew Israelite ceremonies cannot be said to place Lawrence officials on notice of the existence of every single Hebrew Israelite ceremony that may be desired by Plaintiff. Plaintiff's reference to the Day of Atonement ceremony, for instance, did not place Lawrence on notice that he also wanted to participate in the Feast of Weeks or Feast of Tabernacle as requested in his motion seeking a preliminary injunction (*See* Doc. 4, p. 2, 3). Plaintiff, therefore, only exhausted his grievances as to the services and ceremonies referenced in his

grievances: Sabbath day services, a Sabbath day ceremony, the Memorial Blowing of Trumpets, and the Day of Atonement.

As for the other grievances relating to services, Plaintiff did not exhaust the January 5, 2016 grievance as he did not even appeal it to the ARB until after he filed this lawsuit. Though it is not clear whether Plaintiff exhausted the December 19, 2014 and two December 23 grievances, even assuming Plaintiff did exhaust those grievances, their content does not change the Court's calculus. Plaintiff made reference only to Hebrew Israelite services in those grievances, and his proposal attached to one of the December 23 grievances referenced only weekly Sabbath day services. Plaintiff did not request specific celebrations or feasts in those December grievances.

5. **CONCLUSION**

For the reasons already stated, Defendants' Motion for Partial Summary Judgment (Doc. 43) is **GRANTED in part and DENIED in part**. All Defendants shall remain in this lawsuit. All claims in Counts 3 and 4 shall go forward. Only claims relating to the denial of Sabbath day services, Sabbath day ceremonies, the Memorial Blowing of Trumpets ceremony, and the Day of Atonement ceremony shall go forward in Counts 1 and 2. Any other claims in Counts 1 and 2 are **DISMISSED without prejudice**.

**IT IS SO ORDERED**.
DATED: May 16, 2017

*/s/ Michael J. Reagan*
MICHAEL J. REAGAN
**United States District Court**